IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| **FUSION BUILDING GROUP, LLC** <br> Texas limited liability company <br><br> **Plaintiff,** <br><br> v. <br><br> **THE VOICE OF HEALING CHURCH,** <br> Serve: REGISTERED AGENT <br> Jeff Sherk <br> 12938 Dakar Drive <br> Houston, TX 77065 <br><br> **THE VOICE OF HEALING CHURCH PS, LLC,** <br> Serve: REGISTERED AGENT <br> Jeff Sherk <br> 12938 Dakar Drive, <br> Houston, TX 77065 <br><br> **FALCONER INITIATIVE CYPRESS, LLC,** <br> Serve: REGISTERED AGENT <br> Jeff Sherk <br> 12938 Dakar Drive, <br> Houston, TX 77065 <br><br> **FALCONER INITIATIVE INTERNATIONAL , LLC,** <br> Serve: REGISTERED AGENT <br> Jeff Sherk <br> 12938 Dakar Drive, <br> Houston, TX 77065 <br><br> **FORERUNNER INTERNATIONAL,** <br> Serve: REGISTERED AGENT <br> Jeff Sherk <br> 12938 Dakar Drive, <br> Houston, TX 77065 | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO.** _____ |

| | |
|---|---|
| **WELLS OF REVIVAL, LLC,**<br>Serve: REGISTERED AGENT<br>Jeff Sherk<br>12938 Dakar Drive,<br>Houston, TX 77065<br><br>**JEFF SHERK,**<br>12938 Dakar Drive,<br>Houston, TX 77065<br><br>**NICOLE ORTEGA,**<br>10107 Bayou Trial Court,<br>Houston, TX 77064<br><br>**MICHAEL HOLGUIN,**<br>8205 Red Spruce St.<br>Magnolia, Texas  77354<br><br>**BRADLEY HIROU,**<br>3529 Calle Gavanzo,<br>Carlsbad, CA 92009<br><br>**BRAD NOTTINGHAM**<br>15393 Manzanita St.<br>Hesperia, CA 92345<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§         **JURY DEMANDED** |

## COMPLAINT

Fusion Building Group, LLC ("Fusion"), complains of and about The Voice of Healing Church, The Voice of Healing Church PS, LLC, Falconer Initiative Cypress, LLC, Falconer International Initiative, LLC, Forerunner International, Wells of Revival, LLC, Jeff Sherk, Nicole Ortega, Michael Holguin, Bradley Hirou, and Brad Nottingham.

## FACTS

1. Fusion ("Fusion") is a Texas limited liability company. Fusion is the successor and assignee of Union Crossing Development, LP ("Union Crossing").

2

2. Defendants Bradley Hirou ("Hirou") and Brad Nottingham ("Nottingham") are citizens of California. They are subject to personal jurisdiction in Texas as this case relates to business that they transacted in Texas, and torts they committed in Texas.

3. Defendants Jeff Sherk ("Sherk"), Nicole Ortega ("Ortega"), and Michael Holguin ("Holguin") are residents of Texas.

4. Defendant The Voice of Healing Church ("VOH") is a Texas nonprofit corporation conducting business in Harris County, Texas.

5. Defendants The Voice of Healing Church PS LLC ("VOH LLC"), Falconer Initiative Cypress LLC ("FIC"), Falconer Initiative International LLC ("FII"), Forerunner International ("FI"), and Wells of Revival LLC ("WOR") are corporations registered and doing business in Texas.

6. This Court has jurisdiction under 28 U.S.C. §1331 because this dispute arises from a violation of 18 U.S.C. §1962 and the Court has supplemental jurisdiction under 18 U.S.C. § 1367 over the state law claims as they are so related to the federal claim in this action that they form part of the same case or controversy.

7. Defendants are associated with a small, charismatic church formed in Pennsylvania approximately 20 years ago under its recently deceased leader, Pastor Michael Petro.

8. Petro and VOH have moved members from Pennsylvania to Australia, Australia to California, and now to Texas. For many years, Petro, the church, and its leaders have been involved in various dubious moneymaking activities and "investment opportunities" under Petro. In each city and country that VOH church has operated in and ultimately left, there is a trail of victimized members of the congregation including accusations of sexual impropriety, financial misdeeds and more. They have been in Houston for at least 3 years, conducting regular services in

3

various buildings around Houston, most recently in Sharpstown, Tomball, and the Greenway Plaza area.

9. This case arises out of a fraudulent scheme by Defendants to form a for-profit enterprise named Falconer Initiative International, LLC, ("FII") as a purported business venture to induce investments or services by businesses and third-party investors from Texas and other states in an ostensibly government-supported project to create environmentally friendly living apartments, recycling and training centers to assist veterans in learning new skills and trades, and the rehabilitation and housing of prior felons. Included in the project was the development of recording and broadcasting studios for VOH, whereby Defendants would broadcast that the activities and prophecies of Petro were being fulfilled and induce VOH members to financially participate for the advancement of VOH activities.

10. Union Crossing owned a 103-acre industrial office park known as Union Crossing near the intersection of Telge Road and Highway 290 in Harris County, Texas, that for six years had been being developed into a high-end heavy industrial park with rail. On July 16, 2021, Hirou, identified as President of FII, requested a meeting in Fusion's offices in Texas to discuss the purchase of this property. In attendance at this meeting were James Rozman, Leslie Tyer, representing Fusion, Susan Rozman representing Union Crossing, Petro, Ernest Laque, O'Hare, Nicole Ortega, Bradley Hirou, for FII, and Jeff Lindenberger, the commercial broker for Union Crossing. At this meeting Defendants told Fusion and Union Crossing that they desired to purchase Union Crossing's land (which was already under contract to be sold to Transwestern Development Corporation ("TWC")), that they would pay top dollar for the property, and would meet any and all conditions of purchase that were currently with TWC and the purchase agreement

for that sale. Before the meeting began, the church members present requested to begin the meeting with a prayer.

11. The full disclosures made to Fusion and Union Crossing by the Defendants in that prayer and following meeting were as follows:

a. Defendants represented that they had executed a contract to purchase an unrelated adjacent property for $16,000,000 (a finished building adjacent and just over the fence line of Union Crossing, previously known as Gyrodata). This transaction was supposedly under contract with the sellers of Gyrodata at the time of this meeting.

b. Defendants stated that the Lord had spoken in a vision to Petro, a self-proclaimed apostle, bishop, and prophet of VOH, that Defendants needed to purchase adjacent land to fulfill God's mission in Houston through the Defendants. Defendants represented their desire to purchase Union Crossing's property as a mandate from God.

c. Defendants stated that they were interested in purchasing approximately 31 acres of the Union Crossing land adjacent to the Gyrodata land and hand-delivered a letter of intent ("LOI") to purchase this property signed by Sherk. However, the terms were not accepted, and the terms below were negotiated between the parties and accepted by Defendants.

d. Defendants stated that they would pay $10.2 million for the land that was already under contract for $7.2 million with TWC, creating a gain to Union Crossing of over $3 million.

e. Defendants would close in 45 days for cash (which was the same closing date as the TWC contract).

f.  Defendants would award Fusion a $60,000,000 construction contract to design and build the facilities envisioned and needed for FII's operation. With the TWC agreement, Fusion had a $20,000,000 contract, so this new construction contract with FII stood to yield a substantial gain over the previous contract with TWC.

g.  Defendants represented that FII had fully approved financing with SG Blocks, a publicly traded company (NASDAQ symbol SBGX). This representation was stated openly, and everyone present accepted and adopted it.

h.  Defendants further disclosed that FII had contracts and financing in place with Ginnie Mae, Freddie Mac Fannie Mae, and other organizations in their control participating in the venture as follows, all claims of which are found in their executive prospectus and brochure given to Mr. Rozman and Ms. Tyer at the time, including SGB Development Corporation, Falconer Initiative International, Applied Control Concepts Inc., The Voice of Healing Church, Forerunner International, Wells of Revival, Orange County Rescue Mission, Combined Arms, Technical Employment Training, IVRI Group, Zippermast, Fox Fury Lighting Solutions, Copperpiller Consulting Inc., Alpha Special Service Bureau, Glacier Capital Inc., Titan Capital Inc, Raider Outboard Motors, and On Point Cyber. Additionally, the Defendants stated that FII had significant government contacts and support, including a former Cabinet Member and Administrator of the Small Business Association, Jovita Carranza, and others, who were all represented to be partners and participants in the FFI venture. These entities eventually proved to be either non-existent or not involved with the FFI scheme.

12. Through the foregoing representations and subsequent discussions with Defendants, all of which the defendants knew to be untrue and which were made for the purpose of inducing Union Crossing to terminate its contract with TWC and to enter into a contract to sell its land, Union Crossing and Fusion were induced to believe that the project was financed, viable, interesting, profitable, certain, and worthwhile. As such the contract with TWC was terminated on the same day that a new contract was received from FII to purchase 31 acres of the land. The purchase contract was for a price of $10.2 million and included a $100,100.00 non-refundable earnest money due in 3 days, a close of the land purchase in 45 days, and the promise of the delivery of a $60,000,000 construction contract, along with remodeling contracts for several million dollars for the Gyrodata building purchase. (**Exhibit A**)

13. The FII purchase contract was signed on August 23, 2021, by Bradley Hirou, CEO and Founder, and was sent to Riverway Title Company in Houston Texas. Simultaneously, the contract for $7.2 million with TWC was cancelled so that the new contract with FII could proceed. The earnest money of $100,100 was due within three days. After submission to the title company and cancellation of the TWC purchase contract, Defendants failed to perform any of the requirements under the purchase contract including the deposit of $100,100.00 non-refundable earnest money.

14. Defendants knew from the onset that the property they were seeking to purchase was already under a contract for sale with TWC for $7.2 million and that Union Crossing planned to sell the land for a sum sufficient to pay off the primary land loan with its lender. Defendants understood that if the purchase agreement did not close, the land was going to be lost to foreclosure since the lender was unwilling to renew the loan that was coming due shortly. As such, it was clear to Defendants that it was vital for Union Crossing to close on the purchase

agreement and pay off the primary debt on the property. The Defendants knew all this and yet failed to perform as promised under the purchase agreement. Shortly after Defendants breach under the purchase agreement, the lender foreclosed on Union Crossing's land. To add insult to injury, Fusion later learned that the lender subsequently sold the property for approximately $22 million ($15,000,000 more than the debt on the property).

15. Defendants' breach and fraud not only caused Union Crossing to lose the property and the profit Union Crossing would have realized had Defendants performed as promised, but it caused Fusion the loss of the construction project.

16. After the Defendants breached the purchase agreement, Union Crossing assigned all its claims related to the purchase agreement to Fusion, a real estate development company.

17. After the purchase agreement was breached, Fusion made a demand on the Defendants, whereupon Bradley Hirou sent a spurious, rambling document stating that his signature was not a legal signature for reasons listed in the document but was, in fact, "copyrighted through the Maritime Act." Additionally, Hirou sent an invoice to Fusion and his counsel claiming to be owed $66,000,000.00 for using his name in violation of the copyright laws.

18. On or about September 2022, a year after losing the land and future profits from the promised construction contracts, Fusion approached Defendants, asking for a settlement meeting to cover part of the disastrous losses. That meeting was agreed to and was attended by James Rozman, Petro, O'Hare, and Fusion's counsel. As a result of that meeting, Fusion offered to settle for $2,000,000 if it could be paid in a relatively short period of time, despite the massive losses brought about by the actions of Defendants. At that very meeting, Defendants Petro, O'Hare, along with VOH and other ministries of Petro that included Forerunner and Wells of Revival,

8

offered to pay $2,000,000, stating that they were close to righting the ship and being provided with tens of millions of dollars of financing to launch FII finally. This offer was memorialized in the written Settlement Agreement attached as **Exhibit B**. In general, the agreed-upon terms were that Fusion was to receive $100,000 immediately (November 2022), $100,000 in December 2022, and $80,000 a month due on the first of each month beginning January 2023, with a bonus payment of $350,000 in March of 2023 until the entire $2,000,000 was paid. Only the first payment was made by Defendants on time and in full. All subsequent payments through February of 2024 were made in lesser amounts and with no certainty of the amount of the payments. The actual payment receipt schedule is attached as **Exhibit C**.

19. On information and belief, these payments were made from funds of the church (which obtained funds from members of VOH, contributions, the sale of "teachings" from Petro (this was a common practice of the church), and other investors on behalf of the FII project, and other business schemes). Around May 2023, O'Hare told Fusion in several meetings and in over 4,000 text messages that the source of repayment of the settlement between Defendants and Fusion would be from a process that FII had acquired to refine gold and silver from enriched tailings leftover from former mines in Arizona. O'Hare represented that the assays and process to refine the gold and silver indicated that the initial value of the tailings, when completed, would be in excess of $18,000,000 net income. As outlandish as this disclosure was, Petro confirmed this representation to be factual, and indeed, for a while, the payments to Fusion from FII increased a bit. Further, O'Hare represented to Fusion that after several attempts to refine the product in Arizona, it was determined that it would be more economical to move the material, stored in shipping containers, to the Houston area and conduct the process there. It was understood by Fusion that the location to refine this material was in the Brenham area at a company called Cato

Construction, and that the group (FII) initially, and an unnamed company owned and controlled by VOH, O'Hare, and Petro were in the process of trying to raise over $4 million from investors to build out the machinery needed process the material. It is now believed by Fusion that the alleged payments made to FII from about June 2023 until they stopped in June 2024, came from investors in the gold and silver scheme, or other fund raising efforts of the VOH Chuch. Several times O'Hare has mentioned that the Defendants had assets valued at more than $4 million, and that the refining of the material would only take a few weeks when begun. On April 24, 2024, Rozman requested a meeting with Petro to discuss the slow and delinquent payment of the settlement funds and the status of the gold and silver venture. At that time, the payments were delinquent by the sum of over $1,957,000 (including interest). Petro informed Rozman that they were "on the one-yard line" and that the machinery to refine the material was in place and work would begin within a week or so, and that to refine $9 million in silver would take only two weeks more. Petro promised that within 3 weeks the entire amount of the settlement would be paid in full. This was confirmed subsequently many times by O'Hare in writing and verbally.

20. Three weeks later, in mid-May, Petro died unexpectedly in a communal house shared by Petro and O'Hare as well as others, and from that day until the date of filing of this lawsuit, only one payment of $6,000 made on June 2, 2024, has been made, and nothing since that date. Demand letters were sent by Fusion and its counsel and were ignored.

21. Fusion sent Defendants a demand letter for breach of the Settlement Agreement and included a discovery preservation notice. A few days thereafter, the Church announced to its members that because of Fusion's demand, the Church would dissolve and form a new ministry under the same leadership. Through an internal Slack channel, Defendant Jeff Sherk, a board member of the Church, directed Church personnel to delete all materials associated

with the church immediately and to delete software accounts associated with the church to prevent church materials from being accessed.

22. Fusion now has reason to believe that, at the direction of Defendant Jeff Sherk, assets are being dissipated and hidden to frustrate Fusion's ability to collect on its claims. Fusion understands that these assets include cash, cars, earth-moving equipment, and state-of-the-art television and audio equipment worth between $2,000,000 and $4,000,000 retail.

23. The Defendants were the primary parties to this fraud and misrepresented to Fusion almost every statement offered to procure Fusion's participation in selling land and construction services to Defendants.

## CAUSES OF ACTION

### COUNT ONE: Breach of Contract – Purchase and Sale Agreement

24. Fusion incorporates the above paragraphs as if fully set forth herein.

25. FII and Union Crossing executed a valid Purchase and Sale Agreement. Union Crossing performed under this agreement. FII breached the Purchase and Sale Agreement by not purchasing the property and awarding Fusion the construction contract. FII's breach was a proximate cause of damages to Fusion. Specifically, FII's breach caused Fusion to lose $10,200,000, the agreed-upon purchase price. Moreover, FII's breach caused Fusion to lose out on the profit it would have made had FII granted Fusion a $60 million construction contract as promised in the agreement. Moreover, paragraph 21 of the Purchase and Sale Agreement allows for an award of attorney fees and litigation costs in the event of FII's default. As such, Fusion's breach-of-contract claim seeks the aforementioned economic damages, attorney's fees, and litigations costs as well as pre and post judgment interest.

**COUNT TWO: Breach of Contract – Settlement Agreement**

26. Fusion incorporates the above paragraphs as if fully set forth herein.

27. Fusion, FIC, VOH, Forerunner, and Wells of Revival executed a valid Settlement Agreement. Fusion performed under this agreement. FIC, VOH, Forerunner, and Wells of Revival breached the Settlement Agreement by not paying as promised. This breach was a proximate cause of Fusion's damage. Specifically, this breach caused Fusion to lose over $1,957,000. Moreover, paragraph E(5) of the Settlement Agreement allows for an award of attorney fees and litigation costs in the event of default. As such, Fusion's breach-of-contract claim seeks the aforementioned economic damages, attorney's fees, and litigations costs as well as pre and post judgment interest.

**COUNT THREE: Fraud (Tex. Bus. & Com. Code § 27.01) – against all Defendants**

28. Fusion incorporates the above paragraphs as if fully set forth herein.

29. Defendants made false representations of a past or existing material fact to Fusion to induce Fusion to enter into two contracts—the Purchase and Sale Agreement and the Settlement Agreement; and Fusion relied on such representations in entering into that contract.

30. Defendants made false promises to Fusion in entering into the Purchase and Sale Agreement to perform the Agreement; such false promises were material, made with the intention of not fulfilling them, made to Fusion for the purpose of inducing it to enter into a contract, and relied on by it in entering into that contract.

31. Moreover, Tex. Bus. Com. Code §27.01(d) extends liability for false representations to all Defendants because each Defendant was aware of these misrepresentations, failed to notify Fusion, and benefited from the misrepresentation.

32. Further, Defendants made these misrepresentations with actual awareness of the falsity, and as such, Defendants are liable to Fusion for exemplary damages.

33. Due to Defendants' fraud, Fusion suffered actual damages. Moreover, under Tex. Bus. Com. Code §27.01(e), Defendants are liable for Fusion's reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court.

34. As such, Fusion seeks actual damages, exemplary damages, attorney fees, litigation costs, and pre and post judgment interest.

### COUNT FOUR: Conspiracy – against all Defendants

35. Fusion incorporates the above paragraphs as if fully set forth herein.

36. Defendants agreed to act in concert to defraud Union Crossing and Fusion as alleged above.

37. With the knowledge, ratification, and approval of their co-conspirators, the Defendants made the representations set forth above.

### COUNT FIVE: RICO – against all Defendants

38. Fusion incorporates the above paragraphs as if fully set forth herein.

39. Defendants received, directly or indirectly, a benefit from Fusion and other third-parties through a pattern of racketeering activity. Moreover, Defendants are an Enterprise (as defined in Tex. Civ. Prac. & Rem. Code 140B.001)

40. Further, Petro, the church, and its leaders have engaged in interstate commerce by selling products and services online in every state and directly to its members in many states. These services include, but are not limited to, individual audio and/or video teachings known as the School of the Spirit and the School of the Prophet. Further, products for sale include, but are not limited to, Petro's book, other books known as the Oil Merchant Series, and

13

merchandise like mugs, cups, and hats. Moreover, the Defendants solicited and received money from church members in California and possibly other states, promising that said money would be used for the purchase of the Texas property in question.

41. Defendants acted as an enterprise in making false representations to Fusion when they fraudulently induced Fusion into entering into the Purchase Agreement, which gave Defendants valuable property rights such as equitable title to the property, the ability to enjoy any appreciation in the value of the land, the ability to use the land for fundraising, and the ability to resell the land. Defendants obtained this benefit through a pattern of racketeering activity. Further, Defendants racketeering activities involved or affected interstate commerce. Defendants' racketeering activity was a proximate cause of damage to Fusion, including, but not limited to, the loss of the property in question, the loss of profit Fusion would have realized from the sale of the property, and the loss of profit Fusion would have realized from the construction contract. Additionally, under 18 USCS §1964, Fusion seeks treble damages, litigation costs, and reasonable attorney fees.

## PRAYER

**For these reasons, Plaintiff**, Fusion Building Group, LLC, requests Defendant be cited to appear and answer, and that upon a final hearing of the cause, judgment be entered against Defendant, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; together with prejudgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, attorney's fees, punitive damages, expert witness fees, costs of court; and such other relief to which Fusion may be entitled at law or in equity. **Plaintiff requests trial by jury.**

Respectfully submitted,

The Brennan Law Firm, LLC


By: ___/s/ John T. Brennan___
John T. Brennan
Texas Bar No. 02954800
Email: tbrennan@brennanlawtx.com
Address:  2277 Plaza Drive, Suite 235
Sugar Land, Texas 77479
Tel.: (281) 201-6500
Fax. (410) 721-4284
*Attorney for Fusion Building Group, LLC*

**Exhibits:**

Exhibit A – Purchase Contract

Exhibit B – Settlement Agreement

Exhibit C – Actual Payment Receipt Schedule